**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| MICHAEL LORENZO ELMORE, #138418, | ) ) ) |
| Petitioner, | ) CIVIL ACTION NO. 9:16-1064-MBS-BM ) ) |
| v. | ) **REPORT AND RECOMMENDATION** ) |
| SCOTT LEWIS, WARDEN OF PERRY CORRECTIONAL INSTITUTION, | ) ) ) ) |
| Respondent. | ) ) |

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on March 31, 2016.[1]

The Respondent filed a return and motion for summary judgment on August 22, 2016. As the Petitioner is proceeding pro se, a Roseboro order was filed on August 23, 2016, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. Petitioner thereafter filed a memorandum in opposition to summary judgment on September 27, 2016.

This matter is now before the Court for disposition.[2]

---

[1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As
(continued...)

1



**Procedural History**

Petitioner was indicted in Colleton County in December 1986 for murder [Indictment No. 86-GS-15-496], two counts of grand larceny [Indictment No. 86-GS-15-497, 500], burglary 1st degree [Indictment No. 86-GS-15-497], armed robbery [Indictment No. 86-GS-15-500], and robbery [Indictment No. 86-GS-15-500]. See Court Docket No. 18-2, pp. 4-5, 7-8, 11-12. Petitioner was represented by Gerald C. Smoak, Jr., Wayne Unger, Jr., and T.K. Alexander, Esquires, and on May 1, 1989 entered a guilty plea to the charges. See Court Docket No. 18-3. Following the recommended plea agreement between the State and the Petitioner, the plea judge sentenced Petitioner to life imprisonment for murder, and twenty-five (25) years concurrent on the remaining charges. See Court Docket No. 18-3, p. 8. All sentences were also ordered to run concurrently with the sentence Petitioner was already serving at that time in the South Carolina Department of Corrections ("SCDC"). See Court Docket No. 18-3, p. 8.

Almost six (6) years later, Petitioner filed an application for post-conviction relief ("APCR") dated February 29, 1996, in state circuit court; Elmore v. State of South Carolina, No. 1996-CP-15-174; raising the following issues:

> **Ground One:** My VI Amendment: A motion for a speedy trial in 180 days.
>
> > **Supporting Facts:** I put in for a speedy trial in July 7, 1987, I went to trial on May 1, 1989.
>
> **Ground Two:** Ineffective Assistance of Counsel.
>
> > **Supporting Facts:** In that counsel did not prepare for trial or adequately investigate the case.

---

(...continued)
this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



See Court Docket No. 18-4, p. 2.

A hearing was held on February 25, 1997, at which Petitioner was represented by Keith Kinard, Esquire. See Court Docket No. 18-6, p. 1.[3] At the hearing, Petitioner and his PCR attorney informed the PCR court that he wished to withdraw his application for PCR with prejudice. Petitioner was questioned under oath to make sure his request was voluntary, following which the PCR judge found Petitioner knowingly, intelligently, and voluntarily elected to have his PCR application dismissed with prejudice. See Court Docket No. 18-6, p. 1. Petitioner was given credit for time served in jail with a start date of September 19, 1986, and the Order dismissing the PCR was issued on March 31, 1997. See Court Docket No. 18-6, p. 2. Petitioner did not appeal the PCR court's order.

Fifteen (15) years later, on May 2, 2012, Petitioner filed a second APCR in state circuit court; Elmore v. State of South Carolina, No. 2012-CP-15-397; raising the following issues:

**Ground One:** Ineffective Assistance of Counsel (after-discovered);

**Ground Two:** Prosecutor Misconduct (Brady[4] violation); and

**Ground Three**: United States and South Carolina Constitutional Rights Violations.

See Court Docket No. 18-7, p. 3.

---

[3]Although a copy of the transcript of the hearing on Petitioner's first PCR was not submitted as part of the record, the parties have not contested the facts set forth hereinabove regarding the findings of the PCR court pertaining to that proceeding. See Court Docket No. 18-6; see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ["We note that 'the most frequent use of judicial notice is in noticing the content of court records.' "].

[4]Brady v. Maryland, 373 U.S. 83, 87(1963) ["[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."]



3

After the State filed a return and moved to dismiss (dated July 19, 2012) due to the APCR having been filed outside of the applicable one-year statute of limitations and for being successive; see Court Docket No. 18-8; the Administrative Judge for the Fourteenth Judicial Circuit issued a Conditional Order of Dismissal advising Petitioner of the Court's intent to summarily dismiss the APCR as untimely, successive, and barred by res judicata. Petitioner was given twenty (20) days to show why the order should not become final. See Court Docket No. 18-9. On October 8, 2012, an officer in the South Carolina Department of Corrections served Petitioner with a copy of the Conditional Order of Dismissal, and Petitioner signed a receipt of the same; see Court Docket No. 18-10; following which Petitioner filed a motion for the conditional order not to become final. See Court Docket No. 18-11.[5]  By final order filed on April 14, 2015 (dated April 2, 2015), the state court found that Petitioner failed to show sufficient reason why the conditional order should not become final and dismissed the application. See Court Docket No. 18-12. In that order, the Court stated with respect to an alleged Brady claim,[6] that Petitioner could have brought that claim in his first APCR, noting that Petitioner had been sent a letter by his defense counsel discussing this evidence on January 4, 1988, that it was therefore "unlikely the [Petitioner] was unaware of the forensic testing results . . . at the time of his first post-conviction relief proceeding in 1996", and in fact evidenced Petitioner's knowledge of these test results at his guilty plea in 1989. The PCR court also found that

---

[5]There is no filing date or signature date (or signature) on the copy on the motion submitted to the Court. However, the date of the document is not necessary for determination of the issues before the Court. Additionally, in the Final Order of Dismissal from the PCR court that Court refers to numerous other documents filed in that proceeding after the entry of the Conditional Order of Dismissal, including objections raised by the Petitioner to the Conditional Order of Dismissal, as part of the Court's entry of the Final Order of Dismissal. See Court Docket No. 18-12, pp. 4-6.

[6]Petitioner argued that the State had failed to turn over the results of forensic testing on evidence done by SLED.



the alleged exculpatory evidence could not have affected the outcome of Petitioner's criminal proceeding, as the plea transcript reflected overwhelming evidence of guilt including a full confession, Petitioner's fingerprints on the stolen car, and Petitioner's testimony against his co-defendant at the co-defendant's trial. See Court Docket No. 18-12.

Petitioner filed a notice of appeal as to the dismissal of his second APCR as well as a Rule 243, SCACR explanation. See Court Docket Nos. 18-13 and 18-14. Pursuant to SCACR Rule 243(c),

> If the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeal is filed, provide an explanation as to why this determination was improper. This explanation must contain sufficient facts, argument, and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper. If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed.

On July 23, 2015, the South Carolina Supreme Court found that in his Rule 243, SCACR explanation, Petitioner had failed to show that there was an arguable basis for asserting that the determination of the lower court was improper and dismissed the appeal. See Court Docket No. 18-15. The Remittitur was sent down on August 10, 2015. See Court Docket No. 18-16.

Petitioner then filed this Petition for writ of habeas corpus on March 31, 2016 raising the following grounds for relief:

**Ground One:** Brady Violation.

**Ground Two:** Prosecutorial Misconduct.

**Ground Three:** Ineffective Assistance of Counsel.

**Ground Four:** United States and South Carolina Constitutional Violations.

See Petition, pp. 5-10.



**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Respondent argues in his motion, inter alia, that the entire Petition is subject to dismissal because Petitioner failed to file his application for a writ of habeas corpus in federal court within one (1) year following the date on which his judgment became final. This limitations period is part of the AEDPA,[7] and runs, under 28 U.S.C. § 2244(d)(1), from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[7]Antiterrorism and Effective Death Penalty Act of 1996.



> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Furthermore, § 2244(d)(2) provides that,

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

This Petition falls under the later of the dates implicated under § 2244(d)(1)(A) or (D).[8]

**I.**

Section 2244(d)(1) became effective on April 24, 1996. Since Petitioner's conviction became final prior to the enactment of the AEDPA, Petitioner was required to file his federal habeas petition by at least April 24, 1997, unless the statute was tolled. See Pub.L. 104-132, Title I, § 104, 110 Stat. 1218, Brown v. Angelone, 150 F.3d 370-371 (4th Cir. 1998)[adopting one (1) year as the reasonable period]. Because Petitioner's first APCR was already pending on April 24, 1996, the period of limitations was tolled at the latest until April 30, 1997, the expiration of the time for Petitioner to appeal the PCR judge's dismissal on March 31, 1997 of his PCR action.[9]

However, by the time Petitioner then filed his second APCR on May 2, 2012, his time

---

[8] Neither party suggests that either subparagraph (B) or (C) is applicable in this case.

[9] Out of an abundance of caution, Petitioner has been given the benefit of the tolling of the time in which he could have appealed the PCR court order, even though he did not do so. Cf. Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999)["We therefore hold that under § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review) is tolled"]; Gibson v. Klinger, 232 F.3d 799, 803-804 (10th Cir. 2000)["[R]egardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which petitioner *could have* sought an appeal under state law."]; but cf. Ballenger v. Mauney, No. 07-496, 2008 WL 725546 at * 3 (D.S.C. Mar. 17, 2008)[Where Petitioner did not seek appellate review, the PCR order was final on the date that it was issued]. Petitioner had to file an appeal in Petitioner's state APCR within thirty (30) days. Rule 203(b)(1), SCACR.



to file this federal habeas petition had already long since expired. In any event, Petitioner's second APCR was also not even a "properly filed" petition for purposes of tolling the statute of limitations, as it was dismissed on the ground that it was untimely. See Allen v. Siebert, 552 U.S. 3, at * 7 (2007)["We therefore reiterate now what we held in Pace: When a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of §2244(d)(2)."](quoting Pace v. DiGuglielmo, 544 U.S. 408, 413-416 (2005))[A state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)]]; see also McMillian v. Carochi, 198 Fed.Appx. 766, 768 (10th Cir. 2006)["Successive state motions for postconviction relief toll 28 U.S.C. 2244(d)(2)'s one-year limitation period [only] as long as they were otherwise 'properly filed.'"]. An inmate's PCR application and his appellate PCR application may have a statutory tolling effect only if, in addition to being timely for the purposes of the AEDPA analysis, they are timely and duly perfected under the state court rules. See also Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80 (3d Cir.2013). Therefore, even if Petitioner had had any time remaining in which to file a federal habeas petition (which he did not, since over 15 years had passed since the decision in his first APCR became final), Petitioner's second APCR would not have tolled the running of the statutory filing period.

    Based on this chronology, by the time Petitioner filed this federal habeas petition on March 31, 2016, almost eighteen (18) years of non-tolled time had passed since the time expired for Petitioner to file a federal petition on April 30, 1998. To the extent that Petitioner is arguing that he had one year from the date of issuance of the Remittitur in his second APCR on August 10, 2015, to file his federal habeas petition, he is incorrect. While the proper filing of a second APCR may toll the running of the statute of limitations, it does not restart the federal statute of limitations period



anew. Watts v. Warden of Leiber Correctional Institution, No. 12-1211, 2013 WL 4736690 at * 2 (D.S.C. 2013)["Thus, while the petitioner subsequently filed a PCR application . . . , the period of limitations could not be tolled under §2244(d)(2) because it had already expired prior to the filing of the action in this court."]; cf. Artuz v. Bennett, 531 U.S. 4 (2000) [while state collateral review tolls the one-year statute of limitations under § 2244(d) (A), it does not establish a right to file within one year after completion of collateral review]; Harris v. Hutchinson, 209 F.3d 325, 327-328 (4th Cir. 2000).

Therefore, this federal petition was not timely filed under § 2244(d)(1)(A).

**II.**

Under § 2244 (d)(1)(D), Petitioner may bring an action within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." See 28 U.S.C. § 2244 (d)(1)(D). Here, Petitioner references allegedly new materials he received after his conviction, focusing primarily on a South Carolina Law Enforcement Division ("SLED") report, which he contends provide him with a cognizable habeas claim. See Court Docket No. 24, pp. 4, 6. However, Petitioner's claims regarding this alleged Brady material do not entitle him to relief under § 2244(d)(1)(D).

First, the second PCR court specifically found that Petitioner had knowledge of the forensic testing at issue at the time of the filing of his first APCR. See Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence"], cert. denied, 532 U.S. 925 (2001). Despite Petitioner's claim to the second PCR court that he did not receive the letter regarding this material when it was sent to him, the second PCR judge concluded that "[t]his letter alone evidences the

9



[Petitioner's] knowledge of forensic testing and the test results in his first post-conviction relief application." See Court Docket No. 18-12, p. 5.  The second PCR judge also found that Petitioner had sat on his rights for over twenty-five (25) years, and that in any event it was unlikely that any alleged exculpatory forensic evidence would have affected Petitioner's criminal proceeding.  See Court Docket No. 18-12, p. 7.  The Court noted that Petitioner's guilty plea transcript reflected overwhelming evidence against him, including a full confession by the Petitioner, the Petitioner's fingerprints on the stolen car observed at the scene, and Petitioner's testimony against his co-defendant at trial.  See Court Docket No. 18-12, pp. 6-7.  Finally, the second PCR judge held that the material did not meet the test for newly discovered evidence set forth in Hayden v. State, 299 S.E.2d 854, 855 (S.C. 1983)[Requirements for newly discovered evidence include a showing: (1) is such as would probably change the result of the trial; (2) has been discovered since the trial; (3) could not by the exercise of due diligence have been discovered before the trial; (4) is material to the issue of guilt or innocence; and (5) is not merely cumulative or impeaching.].  See Court Docket No. 18-12, p. 6.  Therefore, based on the PCR court's findings, Petitioner had or should have had knowledge of this material and evidence at the time he filed his first APCR.

    In this federal Petition, Petitioner concedes that there was a letter dated January 4, 1988, written to the Petitioner from his defense counsel pertaining to blood tests, but he claims that he did not receive this letter at the time it was written.  See Petition, p. 5.  Petitioner asserted in his response to the Conditional Order of Dismissal in his second PCR case that he first learned of his attorney's letter to him on the subject when he received his attorney's case file on March 21, 2013. See Court Docket No. 18-11, p. 2. Furthermore, in his supplement attached to his second APCR, he alleged that he came into possession of a preliminary report and a statement from Lisa Lee Parker



from SLED on February 29, 2012, which he also contends he did not know existed until his receipt of this material at that time. See Court Docket No. 18-7, pp. 9, 17; see also Court Docket No. 18-7, p. 21.

However, even if the Court were to accept Petitioner's claim that he did not have actual knowledge of this material at the time of his first PCR proceeding, Petitioner's own representations show that the claim could have been discovered through the exercise of due diligence prior to his first APCR. See 28 U.S.C. § 2244(d)(1). See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) [The relevant inquiry is 'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance]. Petitioner argued in his Explanation of his Appeal to the South Carolina Supreme Court that his lead counsel contacted him in October 1991 and told him to look into his case, that there were things that were never revealed to him. See Court Docket No. 18-14, p. 2. Petitioner stated that he then wrote to Colleton County Court Administration in November 1991 regarding obtaining a copy of his transcripts, but that there was too much "formality" and he did not know what to look for at that time. See Court Docket No. 18-14, p. 2. Petitioner alleges that subsequently, in a prison class in 2010, he was informed to write to SLED and that he later did so in 2011. See Court Docket No. 18-14, p. 2. However, even assuming arguendo, which the Court expressly does not find, that Petitioner only first discovered or could have discovered this material when he came into possession of the SLED report on February 29, 2012, Petitioner still did not file this action until over four (4) years later.[10] See Court Docket No.

---

[10] As previously discussed, since Petitioner's second PCR was dismissed as untimely under state law, that [is] the end of the matter for purposes of §2244(d)(2)." Pace, 544 U.S. at 413-416 [A state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)]. Therefore, Petitioner's second APCR did not toll the time for him to file
(continued...)



18-7, pp. 9, 17; see also Court Docket No. 18-7, p. 21. Accordingly, even giving Petitioner every benefit of the doubt, he failed to timely file this federal petition. Harris, 209 F.3d at 327-328.

### III.

Finally, Petitioner also appears to assert that he is entitled to some type of equitable tolling with respect to his claims. The United States Supreme Court has held that the federal one year statute of limitations can be subject to equitable tolling in appropriate cases. Holland v. Florida, 130 S.Ct. 2549, 2552-2554, 2560-2562 (2010); see also Rouse v. Lee, 314 F.3d 698, 704 (4th Cir. 2003)(citing Harris, 209 F.3d at 330). However, circumstances will rarely warrant equitable tolling, and it is the Petitioner who carries the burden of showing an entitlement to equitable tolling. Harris, 209 F.3d at 330; see also Marengo v. Conway, 342 F.Supp.2d 222, 230 (S.D.N.Y. 2004); Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). Further, equitable tolling applies only in the rare and exceptional case, and is limited to "extraordinary circumstances" preventing a prisoner from filing a timely petition. Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000); Marengo, 342 F.Supp.2d at 230; see also Holland, 130 S.Ct. at 2562 ["'Petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing."](quoting Pace, 544 U.S. at 418).

As previously discussed, Petitioner contends that he did not discover the Brady materials "until after his first PCR hearing was dismissed." See Court Docket No. 24, p. 3. However, even giving Petitioner the benefit of every doubt that he did not receive the letter from his counsel at the time that it was written, he admits that his counsel put him on notice in October 1991 and told

---

[10](...continued)
his federal habeas petition.



Petitioner to look into his case because there were things that had never been revealed to him. See Court Docket No. 18-14, p. 2. That notice to the Petitioner was over three (3) years prior to his first PCR proceeding. However, other than writing to the obtain copies of transcripts in November 1991, he does not allege that he took further action until 2011, after taking a prison class which allegedly gave him additional insight, in 2010. See Court Docket No. 18-14, p. 2. Petitioner does not set forth or allege any actions that he took between November 1991 and 2011 to try to pursue and/or protect his rights, or state how he was prevented from doing so. Marengo, 342 F.Supp.2d at 230 ["[T]he party seeking equitable tolling must [also] have acted with reasonable diligence throughout the period he seeks to toll."] (quoting Warren, 219 F.3d at 113). Further, while Petitioner alleges that he was not familiar with the process until he took a prison case in 2010, to the extent that Petitioner contends he was unfamiliar with the legal process or was unrepresented, those arguments would also not entitle him to equitable tolling in this case.[11] Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991) [refusing to apply equitable tolling where the delay in filing was the result of Plaintiff's unfamiliarity with the legal process or his lack of representation]. Furthermore, Petitioner had counsel appointed for his first PCR petition, and was therefore represented by counsel with whom he could have discussed these issues during at least part of this time period.

       In sum, Petitioner has not met his burden of showing that "extraordinary circumstances" prevented him from timely filing this federal Petition, or that he could not have filed a timely petition. Harris, 209 F.3d at 330 [Petitioner has burden of showing entitlement to equitable tolling]; see also Smith v. McGinnis, 208 F.3d 13, 17-18 (2nd Cir. 2000)[AEDPA's statute of

---

[11]Additionally, although Petitioner does not specify when he took this class in 2010, he concedes that he then waited until 2011 before attempting to obtain the material, which he did not receive until 2012.

13



limitations may be equitably tolled only in rare and exceptional circumstances and only "if party seeking equitable tolling [has] acted with reasonable diligence throughout the period he seeks to toll."]. Accordingly, Petitioner is not entitled to any equitable relief, and he is therefore barred from seeking federal habeas relief. See Pearson v. North Carolina, 130 F.Supp.2d 742, 744-745 (W.D.N.C. 2001); Calderon v. U.S. District Court of the Central District of California, 127 F.3d 782, 785-787 (9th Cir. 1997), cert. denied, 118 S.Ct. 1395 (1998), overruled on other grounds in later appeal, 163 F.3d 530 (9th Cir. 1998), cert. denied, 119 S.Ct. 1377 (1999).

## Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 30, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

